HENRY DUNLAP and others, Appellants,

*vs.*

AGNES T. DUNLAP and another.

Cumberland.    Opinion February 15, 1883.

*Will.    Legacy.*

The testator, a bachelor, eighty years of age, after bequeathing to one of his nephews with whom he had his home, certain stocks of the value of fifty dollars, made to the wife of this nephew a bequest in the following terms: "And to my beloved niece, A T D, who carefully nursed me and did all she could to alleviate my distress and contribute to my comfort, I hereby give and bequeath the remainder of the little property I shall have when I depart from this earth, a brief schedule of which bequest follows," comprising one hundred and thirty dollars and various articles, out of which is reserved two debts, leaving about seventy-five dollars in value. About eleven months after the execution of the will, and four months before his own decease, his only brother, resident in Massachusetts, died intestate. From his brother's estate he received nothing during his life-time; but his estate, some more than two year's after the testator's decease, received two thousand four hundred and four dollars as the distributive share belonging to it. *Held,* That the clause, " the remainder of the little property I shall leave," etc. considered in connection with the other portions of the will, and read by the light of the circumstances under which the will was made, the state of his property, his kindred and the like, does not include the money inherited from his brother's estate, but that the same is intestate property, to be distributed by the rules of descent.

ON REPORT on agreed statement of facts.

An appeal from the decree of the judge of probate in the estate of Abner Chapman.

The appellants, Henry Dunlap, Charles R. Dunlap, Betsey C. Brown and A. D. Manson, petitioned to the judge of probate that the sum of two thousand one hundred dollars and eighty-six cents be distributed among the heirs at law, alleging that it was not specifically bequeathed by the will of said Abner Chapman. This petition was denied and an appeal was taken.

The opinion states the facts.

*William L. Putman*, for the appellants, cited: *Cotton* v. *Smithwick*, 66 Maine, 360 ; *Lytle* v. *Beveridge*, 58 N. Y. 598 ; *Allen* v. *White*, 97 Mass. 507 ; *Dole* v. *Johnson*, 3 Allen, 367 ; Jarman on Wills, *759 ; Williams, Ex. (6 Am. ed.) 1157 ; *Goddard* v. *Brown*, 12 R. I. 31 ; *Turner* v. *Turner*, 14 Chanc. D. 829.

*Clarence Hale*, for the appellee.

We start with the presumption of law which is defined in a leading case as follows :—"It is a principle sanctioned alike by reason and by authority that when one engaged in an act so solemn and important, as the execution and publication of his last will and testament, he is not presumed as intending with reference to any portion of his estate to die intestate." Any construction of a will which will result in partial intestacy is to be avoided unless the language of the will compels it ; for the very fact of making a will is strong evidence of the testator's purpose to dispose of his whole estate. *Jarnigan* v. *Conway*, 2 Humph. (Tenn.) 52 ; *Williams* v. *Williams*, 10 Yerger, (Tenn.) 25 ; *Cate* v. *Cramer*, 30 Md. 292 ; *Hanson* v. *Graham*, 6 Vesey, 248 ; Jarman on Wills — Ed. of 1881, p. 851. This presumption of law is borne out and strengthened by the language of the will and the facts of the case at bar.

The scheduling of certain articles which he then has and desires to constitute his bequest to Agnes, does not defeat the general bequest of "the remainder." Although on good terms with his other relatives — all of whom reside at a distance — his affection all goes toward Agnes, and the whole tenor of his words are to give her the bulk of his property. It will be a "little property" but such as it is he manifestly desires Agnes to have the greater part of it. See also, *Arnold* v. *Arnold*, 1 Mylne and Keene, 365 ; *Wafford* v. *Berriage*, 1 Eq. cases, ab. 201 ; *Stuart* v. *Earl of Bute*, 3 Vesey, 212 ; 2 Wms. on Executors, 711 ; Jarman on Wills, p. 762 and 767 and cases cited ; *Byrnes* v. *Baer*, Al. Law Jour. vol. 24, p. 475, from N. Y. Court of Appeals ; *Boyes* v. *Cook*, recent English case, Al. Jour. vol. 22, p. 158 ; *Winchester* v. *Foster*, 3 Cush. 366 ; *Brimmer* v. *Sohier*, 1 Cush. 118.

The opinion of the court in *Blaisdell* v. *Hight*, 69 Maine, 306, is not hostile to our position; for the question there was on a transfer of real estate; and the reasoning of the court is favorable to the construction which we ask in the case at bar.

The whole will is to be construed in arriving at the intention of the testator; but when we come to special words and phrases in the will, such as *remainder*, *property*, &c. see: Jarman on Wills, p. 721; *Howland* v. *Howland*, 100 Mass. 222; *Ely* v. *Ely*, 2 N. J. 43; *Myers* v. *Eddy*, 47 Barb. 263; *Hayes* v. *Foster*, 14 Pick. 539; *Perry* v. *Bland*, 4 Ind. 297; *Hurdle* v. *Oatlaw*, 2 Jones, N. C. Eq. 75.

It was clearly the intention of the testator to give his subsequently acquired property as well as that then in his possession to Agnes T. Dunlap.

Here again we start with a familiar presumption of law, namely: That a will "speaks" from the death of the testator. SHAW, C. J., in *Kimball* v. *Ellison*, 128 Mass. 41, says: "In general a will looks to the future" — "general words may as well include what the testator expects to acquire as what he then actually holds." See also, *Brimmer* v. *Sohier, supra*; *Sweet* v. *Brown*, 12 Met. 175; *Martindale* v. *Warner*, 15 Pa. 466; *Steleman* v. *Steleman*, 1 Watts (Pa.), 466.

In *Dennis* v. *Dennis*, 5 Richardson, S. C. 468, it was held that "all my wagons" and "all my stock" passed after-acquired horses and a wagon.

But the case is much stronger than the presumption of law leaves it. The testator says specifically, "property I shall leave when I shall depart from this earth," and after having opportunity to change the devise he does not make any limitation of it. In *Perry* v. *Hunter*, 2 R. I. 80, a testator at the time of his death was possessed of a large property in French government securities and in deposits of the savings bank in France under the will of his sister, then residing in France, of whose death he had not heard, though he knew she had made a will in his favor and had been dangerously ill, and knew also of what her property consisted; the testator gave and bequeathed by the ninth clause of his will, after certain specific provisions, "all the residue" of his funds,

and by the tenth clause gave, devised and bequeathed "all the residue and remainder of the estate of whatever nature, and whenever acquired of which I may die possessed." It was held that the property acquired under his sister's will was testate, and passed under the language of the ninth section. The case at bar is much stronger than the one last cited. This reasoning was applied in *Card* v. *Alexander*, Connecticut Court of Appeals, 1882. The Reporter, vol. 13, p. 716.

VIRGIN J. During the entire twenty-seven months of the testator's last sickness, he had his home, paying his board, with his nephew, the husband of the appellee, and required and received from the latter constant care, attention and nursing.

He was about eighty years of age, and had been sick about a year, when he executed the holographic will now before us for construction. At the date of it, the value of the specific property enumerated therein and bequeathed to the two legatees, would not exceed one hundred twenty-five dollars. Of this sum he gave fifty dollars to his nephew, who had furnished him a home, "in grateful remembrance of his kindness; and to his "beloved niece Agnes (appellee) who carefully nursed him and did all she could to alleviate his distress and contribute to his comfort," he gave "the remainder of the little property" which he should leave at his decease.

About eleven months after he executed his will, and four months before his own decease, his only brother, resident in Massachusetts, and ten years his junior, died of apoplexy, intestate. From his brother's estate, he received nothing during his life-time, but his estate, some more than two years after his own decease, received twenty-four hundred and four dollars as the distributive share belonging to it. And the question before us is — Does this sum, inherited from his brother's estate, come within the clause — "the remainder of the little property I shall leave when I depart from this earth," and thereby pass to the appellee? or, is it intestate property, which, by the rules of descent, should be distributed among the testator's three nephews and two nieces, his only next of kin? This is to be ascertained from the terms of the will itself, elucidated if may be, by the light of the

.circumstances under which it was made; the state of his property, his kindred and the like.    2 Williams, Executors, (6 Am. ed.) 1240, and cases in note *u.*

When he executed his will, the testator had, as before seen, but very little property of any and all kinds, and no expectation whatever of ever receiving any addition thereto other than what, if anything, he might save from his small annuities above what was necessarily absorbed by his board and other necessary expenses incident to his physical condition.    His will expressly declares the intention to do what testators generally intend — to dispose of all the property of which he should die possessed (*Lett* v. *Randall*, 10 Sim. 112; *Dole* v. *Johnson*, 3 Allen, 364); and that it should go, for the reasons suggested in the will, to the two legatees named. And this disposal, which, under the .circumstances, is to a disinterested person, apparently so fair .on the part of the testator and so well deserved on the part of the legatees, seemed to him so palpably right, that he did not omit to express the feeling that his heirs, residing in Washington, New York, and Massachusetts, to whom he had been no trouble and from whom he had received no care and attention during his painful .and protracted sickness, could not reasonably challenge its "justice and propriety."

This plainly expressed intention, however, was predicated of property valued at one hundred twenty-five dollars, comprising ten shares of railroad stock and a scrip certificate, all worth only fifty dollars, and numerous small articles which he paraded before his mind by naming each in his will, and thereby realizing how little value there was except "as keepsakes" to be divided among five or six heirs, all except one of whom reside out of the state. Whether he would have used language of like import had he made his will after, instead of before, the death of his brother .and the receipt of the twenty-four hundred and four dollars, .can never be certainly known.    It does appear, however, that he .gave what was, at the date of his will and without expectation .of any increase thereafter, his little all, to the legatees, and because it was so little, "as a token of gratitude," rather than as payment of valuable services rendered, in discharge of which the

annuities had evidently been used. This is made apparent also by the desire he expressed in the written memoranda made after the will and before the decease of his brother — that each of the other heirs, including his brother, should receive, "as keepsakes," one or more of the articles comprised in the residuary clause, including the watch, thereby reducing the value of his bequest to appellee one-third, and appealing to her for her "cheerful concurrence," without changing the terms of the will.

Looking at all the circumstances together with the whole will, and we find no clause which does not lead us to the opinion that by adopting the clause "the remainder of the little property I shall leave," &c. had reference only to the remainder of such property, including possible savings from his only income, as he owned when he made his will. The enumeration included all in fact. Nothing known or unknown was omitted from that schedule. If it be said that he did not change his will after his brother's death, and therefore intended that his will should carry the sum inherited,— the answer is — First, there is no evidence whatever in the case that information of his brother's death ever reached him ; and second, or that he ever knew of the condition of his brother's property or even expected to receive any share of it. In fact nothing was received until more than two years after his decease. Our opinion, therefore, is that the decree of the probate court should be reversed, and that the balance of twenty-one hundred dollars and eighty-six cents, should be distributed among the heirs. Costs as by agreement.

*Case remanded to probate court.*

APPLETON, C. J., BARROWS, DANFORTH, PETERS and SYMONDS, JJ., concurred.